*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## No. 25-CV-0284

SIEMENS INDUSTRY, INC., APPELLANT,

V.

GPEC, LLC, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2024-CAB-004551)

(Hon. Ebony M. Scott, Trial Judge)

(Argued March 18, 2026            Decided April 30, 2026)

*Preston L. Zarlock*, with whom *Matthew M. May* was on the brief, for appellant.

*J. Chapman Petersen*, with whom *Patrick Corish* was on the brief, for appellee.

Before EASTERLY and SHANKER, *Associate Judges*, and RUIZ, *Senior Judge*.

EASTERLY, *Associate Judge*: Under the District's Anti-SLAPP statute, D.C. Code § 16-5501 et seq., a defendant to a SLAPP, i.e., a "strategic lawsuit against public participation," may extricate themself from litigation on an expedited timetable by filing a special motion to dismiss. In order to avail themself of this procedural tool, the defendant must first make a prima facie showing that the act for

which they are being sued is an "act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(b). Such an act includes "[a]ny . . . expression or expressive conduct that involves . . . communicating views to members of the public in connection with an issue of public interest." D.C. Code § 16-5501(1)(B). An "[i]ssue of public interest" includes "an issue related to health or safety" but excludes "private interests, such as statements directed *primarily* toward protecting the speaker's commercial interests rather than toward commenting on or sharing information about a matter of public significance." D.C. Code § 16-5501(3) (emphasis added). This court has previously held that "intermixing public and private interests is not disqualifying." *Saudi Am. Pub. Rels. Affs. Comm. v. Inst. for Gulf Affs.*, 242 A.3d 602, 611 (D.C. 2020). In this case, we consider what it means for a statement with intermixed interests to be "directed primarily toward protecting the speaker's commercial interests." D.C. Code § 16-5501(3). We hold that the Anti-SLAPP movant will prevail in making out their prima facie case if the evidence shows that the private interest does not predominate; in other words, it is not disqualifying if the evidence shows that the private and public interests are merely coequal.

## I.     Facts and Procedural History

The subject of this appeal is a letter written by a nonlawyer employee of appellant Siemens Industry, Inc. and sent to an array of recipients: Park Southern Apartments, the owner of the property where Siemens had been hired to "supply parts, programming, engineering, and final checkout for the [property's] fire alarm system"; Marous Brothers Construction (MBC), the general contractor doing work at the property; GPEC, the company MBC had hired to upgrade the onsite electrical systems and that in turn had hired Siemens; and two government entities, the "Washington DC Fire Marshals Office" and "Washington DC Housing Authority."[1] The letter was written "To Whom It M[a]y Concern" and its subject was identified as "Fire Alarm System Status—Park Southern Apartments—800 Southern Ave SE, 20032."  The text of the letter alerted its recipients to the fact that the wiring at the property "d[id] not meet the specifications for a Fire Alarm System," detailed the problems with that wiring, and stated that as a result there was "currently no fully active Fire Alarm system" at the property.  The letter further stated that Siemens had "not performed nor was contracted to perform any field wiring, device installation

---

[1] The official names of these entities are the "Office of the Fire Marshal," https://fems.dc.gov/page/office-fire-marshal;  https://perma.cc/A8HR-7MZ5,  and the "District of Columbia Housing Authority," https://www.dchousing.org/; https://perma.cc/Z56V-WGHB.

or troubleshooting of the existing system," and that it "will not be held liable for any non-operational life safety functions, activations, and notifications with the current condition of the system on [the] premise[s]."[2]

After MBC received Siemens's "To Whom It M[a]y Concern" letter, it issued a letter of breach and a notice to cure to GPEC. MBC stated that it had subcontracted with GPEC to "[f]urnish and [i]nstall a new fire alarm system" and that, per a change order negotiated with GPEC, "[b]oth the new system and the existing system shall be maintained and active throughout the duration of construction and shall be connected/linked at all times." Among other things, MBC informed GPEC that it was "in default with specific terms" of its subcontract and would be responsible for "all of the costs . . . associated" with this incident. MBC demanded that "GPEC immediately take measures to satisfy the ongoing safety needs of the Park Southern building by correcting all deficiencies in the Fire Alarm system as defined by [Siemens]" in its letter. MBC noted that until these issues were resolved, GPEC would be "required to provide a full-time fire watch." Two days after MBC issued the notice to cure, it terminated its contract with GPEC.

GPEC subsequently sued Siemens for (1) defamation (business libel), (2) tortious interference with contract, (3) tortious interference with business

---

[2] The letter followed a series of alleged breaches of contract by Siemens.

expectancy, and (4) breach of contract. GPEC identified Siemens's "To Whom It M[a]y Concern" letter as the actionable conduct underlying its first three claims.[3] Siemens responded by filing a partial motion to dismiss GPEC's first three claims, pursuant to either the Anti-SLAPP Act or Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. After a hearing, the court denied Siemens's special motion to dismiss GPEC's first three claims under the Anti-SLAPP Act but granted its Rule 12(b)(6) motion to dismiss the first and third claims.

Regarding the special motion to dismiss, the Superior Court concluded that Siemens's "To Whom It M[a]y Concern" letter "communicat[ed] views to members of the public" which were of public interest because they were "related to health or safety." But the court also found that the letter explicitly expressed Siemens's commercial interest in navigating its contractual relationship with GPEC and shielding itself from liability. The court acknowledged that "statements intermixing public and private interests [may] fall within the scope of the Anti-SLAPP Act." But it concluded that Siemens had failed to make a prima facie case that the letter was an "act in furtherance of the right of advocacy on issues of public interest" because "when the private commercial interest is explicit from the content of the speech, the

---

[3] GPEC also referenced an email sent by Siemens, but GPEC's complaint neither described this alleged email's contents nor attached the email as an exhibit.

speaker must disprove private motivation, or at least carry its burden [to show] that the statement was not 'directed primarily toward protecting the speaker's commercial interests,'" and that Siemens had "undertaken no such effort here." This appeal followed.

## II.    Analysis

In its appeal to this court, Siemens argues the trial court erred when it concluded that Siemens had failed to make a prima facie showing that its "To Whom It M[a]y Concern" letter was an "act in furtherance of the right of advocacy on issues of public interest." Specifically, it asserts that the court correctly determined that the letter included public expressions concerning issues of public interest but erred in concluding that its statement disclaiming potential future liability was a statement of private interest. Alternatively, Siemens argues that even if this statement was of private interest, any statement of private interest intermixed with the statements of public interest in its letter did not take the letter outside the ambit of the Anti-SLAPP Act. We review the trial court's ruling de novo. *Fells v. Serv. Emps. Int'l Union*, 281 A.3d 572, 580 (D.C. 2022).

First, we agree that the letter was "communicating views to members of the public in connection with an issue of public interest." D.C. Code § 16-5501(1)(B). As explained above, an "[i]ssue of public interest" includes "an issue related to

health or safety." D.C. Code § 16-5501(3). The letter clearly related to a health or safety issue because it discussed the lack of a functioning fire alarm system at a sizeable[4] construction project. As MBC's written response to the letter indicated, once it became aware of the absence of a functioning alarm system at the project, it was "immediately required to provide a full-time fire watch until these issues ha[d] been resolved." Furthermore, among the letter's recipients, Siemens included the D.C. Fire Marshal, whose job is to ensure "the prevention of fire, and the safety of the citizens and persons who live and work in, or visit our city."[5] Of course, a statement otherwise directed primarily toward protecting commercial interests does not become an act in furtherance of the right of advocacy on an issue of public interest simply because the speaker addressed the statement to a governmental agency or the media. Courts must consider an act or statement in its entirety. Here, the inclusion of the fire marshal as a recipient dovetails with the letter's substance and the identity of its author as a nonlawyer service operations manager in Siemens's "Fire Safety and Sprinkler Service Division."

---

[4] The project included the installation of 75 smoke detectors, 53 sprinkler system monitoring points, and 335 alarm speakers.

[5] *See* https://fems.dc.gov/page/office-fire-marshal; https://perma.cc/A8HR-7MZ5.

Second, we are unpersuaded by any argument by Siemens that its disclaimer of liability was not an expression of private interest. Siemens suggests that because it did not "name the parties responsible for the hazardous conditions in order to avoid its own liability," as the speaker did in *Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132 (D.C. 2021), its statements were not made in its commercial interest.[6] But *Close It!* did not define the universe of private interests. And whether or not Siemens "named names," we think it obvious that Siemens's desire not to be held civilly or criminally liable for a safety incident is a private interest, particular to Siemens.[7]

Third, we agree with Siemens that, the expressions of private interest in its "To Whom It M[a]y Concern" letter notwithstanding, it carried its burden to show that the statements in the letter were not directed primarily toward protecting its commercial interests. Although the Superior Court initially acknowledged that intermixing of public and private interests was not fatal to Siemens's prima facie case that it was acting in furtherance of a right of public advocacy, the court

---

[6] Siemens also argues that the Superior Court's denial of its "invocation of the economic interest privilege" that Siemens made in support of its motion to dismiss the tortious interference with contract claim pursuant to Super. Ct. Civ. R. 12(b)(6) "is at odds" with the court's determination that Siemens's letter is not protected by the Anti-SLAPP Act. But as our review of the application of the Anti-SLAPP Act is de novo, we do not rely on the Superior Court's logic.

[7] Siemens ultimately conceded this point at oral argument.

subsequently said that Siemens had a burden to "disprove private motivation."  This was wrong.

We have said repeatedly that statements consisting of expressions of both private interest and public interest are not disqualified from Anti-SLAPP protection. *See Saudi Am. Pub. Rels. Affs. Comm.*, 242 A.3d at 611 ("[A]lthough the definition [of 'issue of public interest' in Section 16-5501(3)] expressly carves out 'private interests,' it does so in a manner that suggests that intermixing public and private interests is not disqualifying."); *see also Fells*, 281 A.3d at 582 (holding "[t]he fact that the [speaker's] statement partially concerned a private matter does not bring it outside of the Act, so long as it was not directed *primarily* at a private interest" (citation modified) (emphasis added)).  As the Superior Court acknowledged, we have also held that it is error for a court to require the speaker to "disprove commercial motivation . . . where such motivation is not apparent from the content of the speech." *Doe No. 1 v. Burke*, 91 A.3d 1031, 1043 (D.C. 2014); *accord Fells*, 281 A.3d at 583.  Contrary to the Superior Court's reasoning, however, we have never held that the inverse of this statement is true—i.e., that where commercial motivation *is* apparent from the content of the speech, the speaker must disprove commercial motivation—and we decline to do so today.  Rather, the burden is always on the movant to make a prima facie showing that a statement or act, when examined in context, was made "in furtherance of the right of advocacy on issues of

public interest." *See* D.C. Code § 16-5502(b) (stating that the special motion to dismiss shall be granted provided "the party filing [the] special motion . . . makes a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest"); *see also Saudi Am. Pub. Rels. Affs. Comm.*, 242 A.3d at 613 (considering not only the statements made, but also the "context" in which they were made in its analysis of whether the movant had made out a prima facie case that it was being sued for actions related to an "issue of public interest").[8] When analyzing statements that contain expressions of both public and private interests, the necessary question becomes whether the statement is "directed primarily toward" a private interest such that it predominates over the public interest. D.C. Code § 16-5501(3). By extending Anti-SLAPP benefits to statements where private interests, though present, are merely coequal and do not predominate over the public interest, the statute reflects a legislative determination to resolve doubts about its coverage in favor of protecting socially valuable speech, such as statements

---

[8] Although courts are encouraged to look beyond the substance of any statements to the context in which they were made, *see supra*, the subjective motivations of the speaker cannot be considered. *See Fells*, 281 A.3d at 582-83 (describing as immaterial "[a] speaker's self-interested motivations" because they "say little about whether the content of their speech is related to issues of public interest").

by putative whistleblowers raising the alarm about pressing issues of public safety (like an immediate fire hazard).

Applying this test to this case, we conclude that Siemens carried its burden to make a prima facie showing that sending its letter was an "act in furtherance of the right of advocacy on issues of public interest." The private interest expressed in its letter, especially when considered in the context of the parties' contractual relationship, was not insubstantial. It did not, however, predominate; it was, at most, coequal with the public interest expressed therein, and, in light of the statute's specific use of the term "primarily," where public and private interests are essentially in equipoise, the Anti-SLAPP movant has met their prima facie burden. Indeed, the private interest reinforced the public interest: Siemens's disclaimer of liability for the potential safety hazard from the lack of a fully functioning alarm system reflected its concerns that people could get hurt (and later sue) if no action was taken to address the problem.[9]

---

[9] We consider this approach consistent with this court's recent decision in *Capitol Intel. Grp. v. Waldman*, 352 A.3d 783 (D.C. 2026), another case where this court found that public and private interests intermixed but that the movant successfully made out a prima facie case under the Anti-SLAPP Act that he was being sued for "acts in furtherance of the right of advocacy on issues of public interest."

In an effort to save its tortious interference claim against Siemens, GPEC argues at length that the statements in Siemens's letter were not made "in good faith." But whether statements were made in good faith is not part of the prima facie case analysis for a special motion to dismiss. *See generally* D.C. Code § 16-5502. Alternatively, GPEC invites us to address the second step of the test of a special motion to dismiss, i.e., whether it has shown likelihood of success on the merits of its tortious interference with contract claim. *See id.* § 16-5502(b). But the trial court did not reach this question, and we decline to do so in the first instance.

For these reasons, we reverse and remand for further proceedings consistent with this opinion.

*So ordered*.